UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

BLUE SPIKE, LLC,

                Plaintiff,

      v.

FRONTIER COMMUNICATIONS CORP.,

             Defendant.

No. 6:18-cv-242-RWS-KNM

**DEFENDANT FRONTIER COMMUNICATIONS CORPORATION'S
RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ................................................. 1

III.    FACTUAL BACKGROUND ..................................................................................... 2

        A.      The Parties ................................................................................................... 2

                1.      Frontier Communications Corp. ...................................................... 2

                2.      Blue Spike LLC ............................................................................... 3

        B.      Procedural History ....................................................................................... 4

IV.     LEGAL STANDARDS ............................................................................................. 5

V.      ARGUMENT ............................................................................................................ 6

        A.      Blue Spike's Infringement Allegations against FCC Fail to State a Claim
                Because FCC Does Not Sell or Offer to Sell the Accused Services ...................... 6

                1.      Blue Spike acknowledges that FCC is a holding company that does
                        not provide the Accused Services. ................................................... 7

                2.      Blue Spike's vague allegations about FCC's "subsidiaries,
                        partners, distributors, and retailers" are insufficient to plead joint
                        infringement. ................................................................................... 9

        B.      Blue Spike's Contributory Infringement Claims Fail As a Matter of Law ........... 10

        C.      Blue Spike Fails to Plausibly Allege Pre-Suit Knowledge for Its
                Willfulness and Inducement Claims .................................................................. 14

VI.     CONCLUSION ........................................................................................................ 18

## <u>TABLE OF EXHIBITS</u>

Ex. 1     Blue Spike, LLC corporate documents from Texas Secretary of State

Ex. 2     Records from the website of the Government of Bermuda for Wistaria Trading Ltd.

Ex. 3     USPTO Assignment Records for the Patents-in-suit

Ex. 4     Complaint filed in *Garteiser Honea, P.C. v. Blue Spike*, 2:18-cv-372-JRG, D.I. 1 (Aug. 24, 2018)

Ex. 5     Copy of Frontier Managed Wi-fi Webpage

Ex. 6     Copy of Frontier FiOS TV Webpage

Ex. 7     Complaint filed in *Blue Spike LLC v. Charter Communications, Inc.*, No. 6:18-cv-195-RWS-KNM, D.I. 1 (filed May 4, 2018)

Ex. 8     Copy of Blue Spike "About" Webpage, www.bluespike.com/company/about

Ex. 9     Lex Machina report for Blue Spike

**\*All emphases are added, unless otherwise noted.**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
    No. 6:13-cv-307, D.I. 77 (E.D. Tex. Feb. 7, 2014)..................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................5, 6, 9, 16

*Blue Spike LLC v. Caterpillar, Inc.*,
    2017 WL 2989204, at *1 (E.D. Tex. Apr. 1, 2017)............................................7, 8

*Cellular Commun. Equip. LLC v. HTC Corp.*,
    2015 WL 11118110 (E.D. Tex. Mar. 27, 2015) .......................................................14

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)..............................................................................10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    2015 WL 5000397 (E.D. Tex. June 3, 2015)..........................................................18

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)..............................................................................15

*Edionwe v. Bailey*,
    860 F.3d 287 (5th Cir. 2017) ....................................................................................5

*Elec. Scripting Prods., Inc. v. HTC Am. Inc.*,
    2018 WL 1367324 (N.D. Cal. Mar. 16, 2018)......................................................17

*Flagg v. Stryker Corp.*,
    819 F.3d 132 (5th Cir. 2016) ....................................................................................6

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ....................................................................................6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)................................................................................................15

*Guiles v. Tarrant Cnty. Bail Bond Bd.*,
    456 F. App'x 485 (5th Cir. 2012) .............................................................................8

*Isquith v. Middle S. Utils., Inc.*,
    847 F.2d 186 (5th Cir. 1988) ....................................................................................8

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012)......................................................................16

*Norris v. Hearst Trust*,
  500 F.3d 454 (5th Cir. 2007) ...............................................................................6

*Pacing Techs., LLC v. Garmin Intern., Inc.*,
  2013 WL 444642 (S.D. Cal. Feb. 5, 2013) ...........................................................17

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
  491 F.3d 1342 (Fed. Cir. 2007)............................................................................10

*SoftView LLC v. Apple Inc.*,
  2012 WL 3061027 (D. Del. July 26, 2012) ...........................................................16

*Stragent, LLC v. BMW of N.A., LLC*,
  2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ..............................................15, 16, 18

*T-Rex Prop. AB v. Regal Ent. Group*,
  2017 WL 4229372 (E.D. Tex. Aug. 31, 2017) .......................................................15

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
  2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) .........................................................18

*Washington v. Allstate Ins. Co.*,
  901 F.2d 1281 (5th Cir. 1990) ..............................................................................8

**Statutes**

35 U.S.C. § 271(c) ...............................................................................10, 11, 14

**Rules**

Federal Rule of Civil Procedure 12 ...................................................................5, 6, 8

## I.  INTRODUCTION

With minimal pre-suit investigation and effort, serial litigant Blue Spike, LLC ("Blue Spike") filed a series of complaints in this District against companies in the telecommunications industry, including defendant Frontier Communications Corporation ("FCC").   Blue Spike copied and pasted allegations from one complaint to the next, filling its complaint against FCC with over 140 pages of boilerplate allegations it previously alleged against one of FCC's competitors, Charter Communications, Inc. ("Charter"), including 120 instances where it alleges in this case against FCC that ***Charter's*** "Spectrum" service infringes.  Blue Spike's lack of diligence is further evidenced by the fact that it sued the wrong Frontier entity.  FCC is a holding company that does not provide the accused telecommunications services and thus cannot infringe.  FCC tried to avoid burdening the Court by proposing to Blue Spike's counsel—before FCC filed its Answer—that Blue Spike substitute Frontier's Texas operating entity for FCC.  Blue Spike refused, however, claiming incorrectly (and crassly) that "holding companies hold the money."  Because FCC is a holding company that does not conduct the activities complained of, judgment on the pleadings should be granted in FCC's favor.

In addition to suing the wrong defendant, many of Blue Spike's infringement allegations are legally deficient and should be dismissed for failure to state a claim.

## II.  STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should enter judgment on the pleadings against all of Blue Spike's infringement allegations, where FCC is a holding company that does not itself perform any of the allegedly infringing conduct and where Blue Spike has not alleged joint infringement.

2. Whether the Court should grant FCC's motion for judgment on the pleadings against Blue Spike's contributory infringement claims, where the accused instrumentalities are services that

cannot contributorily infringe as a matter of law.

3. Whether the Court should enter judgment on the pleadings against Blue Spike's willful and induced infringement claims, where Blue Spike has not plausibly alleged that FCC had pre-suit knowledge of the patents-in-suit or the specific intent to induce infringement.

## III.   FACTUAL BACKGROUND

### A.   The Parties

#### 1.   Frontier Communications Corp.

FCC is a Delaware-incorporated holding company.  As FCC stated to the United States Securities and Exchange Commission ("SEC") in its 2017 Form 10-K, FCC "is primarily a holding company and its principal assets consist of the shares of capital stock or other equity instruments of its subsidiaries."  D.I. 8, Answer ¶ 3; D.I. 8-1, Decl. of A. Meyer in Support of FCC's Answer [hereinafter "Meyer Decl.] ¶ 4 (quoting Ex. A thereto).   As a holding company, FCC does not own or operate the equipment that makes up a telecommunications network, nor does FCC own or maintain a telecommunications network.  *See* Answer ¶ 7; Meyer Decl. ¶ 5.  Further, FCC does not itself provide telecommunications services, Internet services, television services, or similar services to the public, including the accused Business Internet and FiOS TV services ("Accused Services").  *See* Answer ¶¶ 3–7; Meyer Decl.  ¶¶ 5–6.

Although various services are provided under the "Frontier" or "Frontier Communications" brand names (including those at issue in this case), they are not provided by FCC, but rather by operating company subsidiaries of FCC.  *See* Answer ¶ 3; Meyer Decl. ¶ 10, 11.  In particular, the Accused Services at issue here are provided by an indirect subsidiary that was acquired from Verizon in 2016.  That operating company is properly licensed to provide such services and is properly registered to do business in Texas.  *See* Answer ¶¶ 3, 6; Meyer Decl. ¶ 10.   FCC does not provide, and is not licensed to provide, telecommunications services in Texas.  *See* Answer ¶

3; Meyer Decl. ¶ 10.  Indeed, FCC is not registered to do business in Texas and does not do any business with the public in Texas.[1]  *See* Answer ¶ 3, 6; Meyer Decl. ¶ 8.

FCC is, legally and factually, a separate corporate entity that is distinct from its subsidiaries, including the indirect subsidiary that provides the Accused Services.  *See* Answer ¶ 3; Meyer Decl. ¶ 7.  Each of FCC's subsidiaries maintains its own independent corporate, partnership, or limited liability company status, identity, and structure, and FCC observes corporate formalities with respect to its subsidiaries.  *See* Answer ¶ 3; Meyer Decl. ¶ 7.

### 2.  Blue Spike LLC

Blue Spike is a non-practicing entity that is apparently controlled by Scott A. Moskowitz, the named inventor of the patents-in-suit.  *See* Ex. 1 (Blue Spike, LLC corporate documents).  Blue Spike has filed over 170 lawsuits for alleged patent infringement, including over 140 in this District.  As far as can be determined, Blue Spike has not won a single judgment for infringement of its patents—indeed, it appears that not a single one of those lawsuits has proceeded to trial, or otherwise resolved on the merits in Blue Spike's favor.  *See* Ex. 9, Lex Machina Report for Blue Spike at 5.  Rather, Blue Spike appears to be in the business of filing lawsuits and either reaching settlements or dropping the cases altogether.

Referring to "bluespike.com," Blue Spike nonetheless asserts that it is a "practicing entity, just not in the same field as Defendant."  D.I. 1, Compl. ¶ 10.  Yet that website appears to relate to the Florida-incorporated Blue Spike, ***Inc.***, not the Texas-incorporated Blue Spike, ***LLC*** that is the plaintiff here.  *See* Ex. 8, Webpage at www.bluespike.com/company/about (describing "[f]or

---

[1] Under its former name of Citizens Utilities Corporation, FCC was previously registered to do business in Texas, but filed an Application for a Certificate of Withdrawal with the Texas Secretary of State on October 3, 2000.  *See* Answer ¶ 3; Meyer Decl. ¶ 8.  In that Application, FCC stated that "[i]t is not transacting business or conducting affairs in the State of Texas" and that "[i]t hereby surrenders its authority to transact business in Texas."  Meyer Decl. ¶ 8; D.I 8-3, Ex. B to Meyer Decl. at 2.

Blue Spike, *Inc.* the inciting incident that launched the company," and stating "Copyright © 1997-2017 Blue Spike, *Inc.*").  (Both entities are controlled by Mr. Moskowitz.)  It seems that Blue Spike, LLC has no business other than asserting patents.

## B.  Procedural History

Blue Spike, represented by Garteiser Honea, P.C. and Garteiser Honea, PLLC (collectively "Garteiser Honea"), filed the 141-page, 525-paragraph Complaint in this action on May 31, 2018. The Complaint alleges 17 counts of infringement by FCC of 12 patents-in-suit.  *See* Compl. at 1–2.  Of those, counts 1 through 6 allege infringement by "Business Internet Products and Services." *See id.* ¶ 19.   Counts 7 through 17 allege infringement by "FiOS TV Accused Products and Services."  *See id.* ¶ 21.  Blue Spike's Complaint suggests that the counts against "Business Internet Products and Services" may be specifically directed to "Managed Wi-fi" services, as the only support provided for the allegation that "Defendant makes, uses, offers for sale and sells its Business Internet products and services" is a "[s]creen shot of Defendant offering of [sic] 'Managed Wi-Fi' of the Frontier Business webpage."  *Id.* ¶ 18.  With respect to FiOS TV, Blue Spike has not indicated if it believes that a specific aspect of FiOS TV infringes, as opposed to FiOS TV as a whole, providing only a "[s]creen shot of Defendant offering of [sic] 'Frontier FiOS TV' from product offerings."  *Id.* ¶ 20.

Although each count provides nearly 30 paragraphs of numbered allegations, nearly all are cut-and-paste boilerplate statements of law or recitations of elements of causes of action.  *See, e.g.*, *id.* ¶¶ 35, 66, 97, 128, 157, 186, 216, 245, 274, 303, 332, 361, 390, 419, 448, 477, 506 (all identical); 47, 78, 109, 140, 169, 198, 228, 257, 286, 315, 344, 373, 402, 431, 460, 489, 518 (all identical).  In many cases, Blue Spike was sloppy with the cut-and-paste job: for example, Blue Spike copied the text of the asserted claim of the '295 patent from count 12 (*id.* ¶ 358) and pasted in that text for the asserted claims of the '602, '842, '408, '116, and '011 patents in counts 13

4

through 17, respectively.  *See* ¶¶ 387, 416, 445, 474, 503.  And, as previously noted, Blue Spike copied and pasted into the Complaint against FCC 120 allegations directed to a third-party competitor's services.

On July 30, 2018, counsel for FCC contacted counsel for Blue Spike, Randall Garteiser, informing him that FCC is a holding company that does not offer the accused services.  *See* D.I. 8-4, Ex. C to Meyer Decl. at 5.  FCC even offered to substitute the correct Texas operating company as the named defendant.  *Id.*  Mr. Garteiser declined the offer.  *See id.* at 4.  Mr. Garteiser stated that Blue Spike stood by its decision to sue FCC, a holding company, because "holding companies hold the money and technology, so we don't want to sue for infringement a company with no money."  *Id.*  By letter dated August 3, 2018, FCC put Blue Spike on notice that it considered the Complaint to have been filed either without proper diligence or in bad faith, it would answer and subsequently move for judgment on the pleadings, and, if successful, would seek attorney's fees and sanctions.  *See id.* at 2.  FCC answered on August 6, 2018.  *See* D.I. 8.

## IV.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A Rule 12(c) motion may be granted upon a showing that the plaintiff has failed to state a claim, *id.* at 12(h)(2)(C), among other reasons.

When a Rule 12(c) motion contends that the complaint fails to state a claim, "[t]he standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."  *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citation and internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Bare legal conclusions and facially implausible allegations do not suffice.   *See id.* ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citation omitted, alteration in original)).

As with a Rule 12(b)(6) motion to dismiss, on a 12(c) motion for failure to state a claim, a court may go beyond the pleadings to consider documents that are matters of public record. *See, e.g.*, *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 n.16 (5th Cir. 2016) ("Even when 'deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.'" (citation omitted)); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[Where] there was no actual asserted factual dispute ... the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand."); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

## V.   ARGUMENT

### A.  Blue Spike's Infringement Allegations against FCC Fail to State a Claim Because FCC Does Not Sell or Offer to Sell the Accused Services

It is undisputed that FCC is a holding company.  Blue Spike acknowledges that fact, which is supported by publicly available documents, yet persists in pursuing FCC rather than the Texas operating company for mercenary reasons.  D.I. 8-4, Ex. C. to Meyer Decl. at 4.  Blue Spike's gambit should be rejected.  In addition, to the extent Blue Spike's Complaint can be read to assert a claim for joint infringement, Blue Spike has not pleaded facts sufficient to establish a joint

enterprise, or that FCC directs and controls the alleged infringing conduct.  Judgment on the pleadings should be granted.[2]

> 1. Blue Spike acknowledges that FCC is a holding company that does not provide the Accused Services.

As set forth in FCC's Answer and the Meyer Declaration in Support of FCC's Answer, FCC does not provide the Accused Services.  *See* Answer ¶ 3; Meyer Decl. ¶ 10, 11.  As set forth above, FCC tried to work with Blue Spike to correct the named defendant before answering and filing this motion.  *See supra* at 5; *see also* D.I. 8-4, at 5.  Blue Spike's counsel rejected the offer: "We disagree that the party named is not the correct party for Frontier.  Holding companies hold the money and technology, so we don't want to sue for infringement a company with no money." *Id.* at 4.  But as FCC's counsel pointed out, Blue Spike cannot, in good faith, sue for patent infringement a company that does not own, operate, sell, or offer for sale the Accused Services, on the supposition that the company has money.  *See id.* at 2.

As other courts in this District have held, Blue Spike's allegations need not be taken at face value where they are facially implausible, including when viewed in light of evidence outside the pleadings.  In *Blue Spike LLC v. Caterpillar, Inc.*, Blue Spike sued Caterpillar for alleged infringement by the "Cat Phone."  *See* Dkt. No. 6:16-CV-1361 RWS-JDL, 2017 WL 2989204, at

---

[2] Not only has Blue Spike sued the wrong defendant, it is also far from clear that Blue Spike is the correct plaintiff.  Blue Spike is not the owner of the patents-in-suit, which are owned by Wistaria Trading Ltd. ("Wistaria"), a Bermuda-incorporated entity.  *See* Ex. 2 (Bermuda government corporate records); Ex. 3 (USPTO assignment records).  Blue Spike claims to be the "the assignee of the exclusive license of the Patents-in-Suit," with "ownership of all substantial rights in the Patents-in-Suit."  Compl. ¶ 2.  However, Blue Spike's counsel Garteiser Honea alleges in a recently filed complaint against Blue Spike that revenues from Blue Spike's litigation settlements have not actually been paid to Blue Spike.  *See* Ex. 4 (*Garteiser Honea, P.C. v. Blue Spike*, 2:18-cv-372-JRG, D.I. 1, ¶ 23 (Aug. 24, 2018)).  Rather, since about 2016, "[Blue Spike's director Scott] Moskowitz continually forced [Garteiser Honea] to direct settlements abroad to its off-shore entity instead of first to [Garteiser Honea's] trust account."  *Id.*  If Wistaria, or some other off-shore entity, retains rights to a substantial portion of the proceeds, Blue Spike does not hold "all substantial rights," and does not have standing.

*1 (E.D. Tex. Apr. 1, 2017), *report and recommendation adopted*, 2017 WL 1829858 (E.D. Tex. May 8, 2017).  Yet as Caterpillar demonstrated in its motion to dismiss, including through witness declarations and evidence outside the complaint, it had no involvement with the accused phones, having merely licensed its name and branding to a third party.  *See id.* at *4–5.  Judge Love held that "Blue Spike's claims against Caterpillar are so deficient in factual support that its Amended Complaint fails to state a claim to relief that is plausible on its face," and determined that "granting Caterpillar's Motion to Dismiss on the basis of 12(b)(6) would also be proper."  *Id.* at *6.  FCC submits that this Court should do the same and dismiss Blue Spike's allegations against what it concedes to be a holding company.[3]

Assuming Blue Spike conducted a proper pre-filing investigation, it learned of FCC's status as a holding company from public records.  FCC's most recent Form 10-K, for example, states that FCC "*is primarily a holding company* ... and its principal assets consist of the shares of capital stock or other equity instruments of its subsidiaries."  D.I. 8-2, at 19 (emphasis in original).  Such a statement confirms that FCC's assets *do not include* the telecommunications and

---

[3] In the alternative, Judge Love recommended that it would be proper, under Rule 12(d), to convert the motion to dismiss into a limited motion for summary judgment.  *See id.* at *5; Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  FCC is likewise amendable to converting the present motion into one for summary judgment, limited to the issue of whether FCC is a holding company that can be held liable for the alleged patent infringement of a distinct subsidiary.  The Fifth Circuit has held that the rule imposes a notice requirement before the motion may be converted, which is satisfied "if the nonmovant knows that the court *may* convert the motion."  *Guiles v. Tarrant Cnty. Bail Bond Bd.*, 456 F. App'x 485, 487 (5th Cir. 2012) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195 (5th Cir. 1988)) (emphasis in original); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990) ("[T]he notice required is only that the district court *could* treat the motion as one for summary judgment, not that the court *would* in fact do so." (emphasis in original)).  "A non-moving party receives adequate notice when it is aware that the movant has placed matters outside of the pleadings before the district court for its review." *Guiles*, 456 F. App'x at 487 (citing *Isquith*, 847 F. 2d. at 196).

television networks providing the accused Business Internet and FiOS TV services.  Answer ¶ 3; Meyer Decl. ¶ 4; *see also* D.I. 8-2 at 152–54 (listing FCC's subsidiaries).  Moreover, the Texas Secretary of State's website shows that FCC is not registered to do business in Texas and has not been registered for *18 years*.  Answer ¶ 3; Meyer Decl. ¶ 8; D.I. 8-3, Ex. B to Meyer Decl. at 2.

Because FCC as a holding company does not sell or offer to sell the Accused Services, Blue Spike's allegations are facially implausible and judgment should be entered in favor of FCC.

2. Blue Spike's vague allegations about FCC's "subsidiaries, partners, distributors, and retailers" are insufficient to plead joint infringement.

In addition to its facially deficient allegations that FCC itself practices all the elements of the patents-in-suit, Blue Spike concludes, without any factual support, that FCC has been directly infringing by "directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps [of the patents-in-suit]."  *E.g.*, Compl. ¶¶ 29, 60, 91, 122, 153, 182, 211, 241, 270, 299, 328, 357, 386, 415, 444, 473, 502.[4]  Blue Spike also asserts, without elaboration, that FCC "controls its Business Internet Accused Products and Services," and "has partnered with numerous resellers to offer for sale and sell the Business Internet Accused Products and Services."  *Id.* ¶ 29.  To the extent Blue Spike can be deemed to have alleged a joint-infringement theory based on these paragraphs—the word "joint" nowhere appears in the Complaint—its conclusory allegations are insufficient to plausibly plead such a cause of action. *Cf. Iqbal*, 556 U.S. at 678 ("formulaic recitation of the elements of a cause of action will not do."). Blue Spike needed to "plead[] factual content that allows the court to draw the reasonable inference" that FCC and its subsidiaries or alleged partners, distributors, and retailers are joint infringers.  *Id.*  Given that the Complaint never mentions any subsidiaries or partners, distributors,

---

[4] These allegations are so boilerplate, in fact, that Blue Spike accuses FCC of "practicing all the steps" of the claim even when the asserted claim is a system claim.  *E.g. id.* ¶¶ 153, 182, 211, 299, 328, 357, 444, 502.

and retailers by name, much less any facts sufficient to establish the elements of a joint-infringement claim, and indeed fails even to include an express allegation of joint infringement, Blue Spike has failed to state a claim that FCC and any of its subsidiaries or alleged partners, distributors, and retailers jointly infringe.  Judgment on the pleadings should be granted.

### B.  Blue Spike's Contributory Infringement Claims Fail As a Matter of Law

Although Blue Spike alleges that the Accused Services contributorily infringe the patents-in-suit, a service cannot contributorily infringe, as a matter of law.  The contributory infringement statute, 35 U.S.C. § 271(c), imposes liability only on:

> [w]hoever *offers to sell* or *sells* within the United States or *imports* into the United States *a component* of a patented machine, manufacture, combination or composition, or *a material or apparatus* for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use....

Thus, under the plain language of the statute, contributory infringement requires the "sale," "offer[] for sale," or "import[]" of a "component," "material," or "apparatus."  "A party that provides a service, but no 'material or apparatus,' cannot be liable for contributory infringement." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017); *see also PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007) ("Under the plain language of the statute, a person who provides a service that assists another in committing patent infringement may be subject to liability under section 271(b) for active inducement of infringement, but not under section 271(c) for contributory infringement.").

For each of the patents-in-suit, Blue Spike's alleged factual basis for contributory infringement is that "[FCC] contributed to the infringement by providing" "the Business Internet Accused Products and Services," Compl. ¶¶ 48 (count 1), 79 (count 2), 110 (count 3), 141 (count

4), 170 (count 5), 199 (count 6), "the Spectrum[5] Accused Products and Services," *id.* ¶¶ 229 (count 7), 258 (count 8), 287 (count 9), 316 (count 10), 345 (count 11), 375 (count 12), 403 (count 13), or "the FiOS TV Accused Products and Services," *id.* ¶¶ 432 (count 14), 461 (count 15), 490 (count 16), 519 (count 17), "to its partners and resellers, who offer for sale and sell [the same]."  At no point does Blue Spike allege that FCC contributes to infringement by offering to sell, selling, or importing any "material or apparatus," as required by § 271(c).

On their face, these allegations fail to state a claim for contributory infringement.  First, regarding FCC's own actions, the above-cited paragraphs of the Complaint allege that FCC merely "provid[es]" the accused instrumentalities "to its partners and resellers."   But 35 U.S.C. § 271(c) only imposes liability for "offering for sale," "selling," or "importing."   Even according to the Complaint, the actual offer and sale of the accused instrumentalities are performed by "[FCC's] partners and resellers."   FCC, as a distinct corporate entity, cannot be liable for the actions of any "partners and resellers" without a showing of joint infringement and Blue Spike has not pleaded any such allegations.  *See* § V.A.2, *supra*.  Thus, the failure to allege an "offer for sale" or "sale" by FCC is fatal to Blue Spike's claim.

Second, although Blue Spike refers in its allegations to "Accused ***Products*** and Services," its factual allegations regarding the accused instrumentalities are directed solely to services (the sale of which by law cannot contributorily infringe), not products.  For example, with regard to the "Business Internet Accused Products and Services," the Complaint's only identification of the accused instrumentality is a "[s]creen shot of Defendant offering of [sic] 'Managed Wi-Fi.'"   Compl. ¶ 18 (quoting the webpage available at https://business.frontier.com/solutions/wifi).   Yet that page repeatedly refers to "Managed Wi-Fi" as a ***service offering***, rather than a physical

---

[5] As noted above, Frontier does not provide Spectrum, Charter does.

"material or apparatus." *See e.g.,* Ex. 5 at 1 ("Wi-Fi *services* from Frontier always remain separate from your company's wireless networks"), 5 ("our managed Wi-Fi *service* works with any computers," "Frontier Wi-Fi for Business is an uncapped wireless *service*").  As the page further explains, "Managed Wi-Fi" is a service by which a customer pays to have a third party manage its Wi-Fi networks on its behalf.  *See id.* at 1 ("Managed Wi-Fi networks are wireless networks operated by a third party.... When you choose managed Wi-Fi from Frontier, you get the benefits of having the same company running the network and managing your business's wireless access points.").  Nor does the Complaint identify the sale or offer for sale of any allegedly infringing material or apparatus in connection with a sale or offer for sale of "Business Internet" or "Managed Wi-Fi."  Thus, because "Business Internet" is a service, not a material or apparatus, the sale or offer for sale of "Business Internet" cannot contributorily infringe the asserted patents in counts 1 to 6.

Similarly, the allegations against "the FiOS TV Accused Products and Services" are directed solely to services, not products.  The Complaint's only identification of the accused instrumentality is a "Screen shot of Defendant offering of [sic] 'Frontier FiOS TV.'"  Compl. ¶ 20 (quoting the webpage available at https://go.frontier.com/fios/tv, for ZIP Code 75702).  That page states "FiOS = Fiber-Optic *Service*."  Ex. 6 at 2; *see also id.* at 3 ("When you get FiOS TV *service*, you don't just get faster speeds but also a more reliable connection."), 3 ("FiOS TV *Service* Installation").  As the webpage makes clear, "Frontier FiOS TV" is a television and video service, not a product.  Nor does the Complaint identify the sale or offer for sale of any allegedly infringing material or apparatus in connection with a sale or offer for sale of Frontier FiOS TV.  Thus, because Frontier FiOS TV is a service, not a material or apparatus, the sale or offer for sale of FiOS TV cannot contributorily infringe the asserted patents in counts 14 through 17.

The allegations of contributory infringement by "the Spectrum Accused Products and Services" should be dismissed for the additional reason that FCC does not sell Spectrum TV. Rather, Spectrum TV is sold by Charter and/or its affiliates, who are competitors of FCC and its subsidiaries.  This is made plain by Blue Spike's own complaint in its previously filed action against Charter, in which it alleged that "Defendant [Charter] also makes, uses, offers for sale and sells its Spectrum TV systems, products and services."  Ex. 7 (*Blue Spike LLC v. Charter Commc'ns, Inc.*, No. 6:18-cv-195-RWS-KNM, D.I. 1 ¶ 21 (filed May 4, 2018)).  It appears that Blue Spike simply copied and pasted allegations from its complaint against Charter into the present one, but neglected to change the name of the accused instrumentality from "Spectrum" ***120 times***. Because this Court is not required to accept as true the facially implausible allegation that FCC sells its competitor's services, and Blue Spike's own complaint against Charter makes clear that FCC does not sell the Spectrum TV service, FCC cannot contributorily infringe counts 7 to 13.

It should be noted that in several allegations of direct infringement, the Complaint refers to pieces of hardware that are allegedly used in the provision of the accused services.  For example, counts 1 to 4 allege that FCC performs the asserted claims using "routers."  Compl. ¶¶ 31–33, 43, 62–64, 93–95, 124–26.  Counts 11 to 15 allege that "FiOS TV" "contains a local content server system" that embodies the asserted claims.  *Id.* ¶¶ 330, 359, 388, 417, 446.  But Blue Spike makes no attempt to identify these routers or local content servers.  Importantly, Blue Spike does not allege or otherwise provide any suggestion that FCC offers to sell, sells, or imports the allegedly infringing routers and local content servers.  With no allegation that FCC has offered for sale, sold, or imported these unidentified routers and local content servers, Blue Spike's claims must fail.

To the extent that Blue Spike intended to allege that these routers or local content servers are "components" that are sold, offered for sale, or imported by FCC, it still has failed to state a

claim for contributory infringement, as it has not pleaded that these devices are "especially made or especially adapted for use in an infringement," and "not ... suitable for substantial noninfringing use" as required by § 271(c).  The relevant allegations in the Complaint are boilerplate, conclusory statements that "[t]he accused functionality ... has no substantial non-infringing uses," and do not provide factual allegations directed to any particular device.  *See* Compl. ¶¶ 49, 80, 111, 142, 171, 200, 230, 259, 288, 317, 346, 375, 404, 433, 462, 491, 520.  In many cases, these allegations are directed to a service as a whole, which as discussed, cannot infringe as a matter of law.  *See, e.g.*, *id.* ¶ 433 ("The accused functionality in the Defendant's FiOS TV Accused Service has no substantial non-infringing uses.").  This recitation of the elements of the statute does not meet the requirement to plead specific facts sufficient to raise an inference of liability.  *Cf. Cellular Commc'ns Equip. LLC v. HTC Corp.*, 2015 WL 11118110, at *5 (E.D. Tex. Mar. 27, 2015) (dismissing contributory-infringement claim where allegations "do not identify any components of the accused devices that are a material part of the invention," nor "support a plausible inference that the accused devices or components thereof cannot be used for any other purpose than infringement," but, as here, merely recite the elements of contributory infringement).  For this additional reason, Blue Spike's claims must fail.

### C. Blue Spike Fails to Plausibly Allege Pre-Suit Knowledge for Its Willfulness and Inducement Claims

Blue Spike has not alleged facts to show either that FCC knew of the patents-in-suit prior to the filing of the Complaint as required for its pre-suit willfulness and inducement claims, or that FCC had the specific intent to induce infringement.  Accordingly, judgment on the pleadings should be granted against Blue Spike's claims for pre-suit willful infringement and pre-suit induced infringement.

A claim for willful infringement requires the plaintiff to plead facts sufficient to demonstrate that the defendant had knowledge of the asserted patents.  *See T-Rex Prop. AB v. Regal Ent. Group*, 2017 WL 4229372, at *10 (E.D. Tex. Aug. 31, 2017) (Mitchell, J.) (holding that where plaintiff alleged it "provided constructive knowledge [of the Patents-in-Suit] to the Defendant," but "does not allege, for instance, how or when [Defendant] acquired this constructive knowledge[,] Plaintiff states no facts from which the Court can reasonably infer that [Defendant] knew of the Patents-in-Suit, pre suit," and thus fails to state a claim).

A claim for induced infringement also requires pleading knowledge, and additionally requires pleading specific intent to induce infringement.  *See Stragent, LLC v. BMW of N.A., LLC*, 2017 WL 2821697, at *2–3 (E.D. Tex. Mar. 3, 2017) (Mitchell, J.) ("A claim for induced infringement under 35 U.S.C. § 271(b) requires that: (1) there be an act of direct infringement by another; (2) the defendant knowingly induced the infringement; and (3) the defendant had the specific intent to encourage the other's infringement.  The knowledge element ... necessarily includes **the requirement that he or she knew of the patent**." (citing *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)).  "The intent element requires that the defendant specifically intended for its customers to infringe the asserted patents; it is not enough that an accused inducer merely intends to cause others to perform certain acts which are ultimately found to infringe." *Id.* at *3 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).

For each of the patents-in-suit, Blue Spike asserts that "Defendants had knowledge of the [patent-in-suit] including but not limited to at least one or more of the following events:"  (1) "[i]n the course of its due diligence and freedom to operate analyses," (2) "[n]ews coverage of Blue Spike's enforcement of this patent against other infringers," and (3), for count 1 and counts 3 to 17, "[p]art of the due diligence investigation performed for SEC filings."  Compl. ¶¶ 52, 83, 114,

145, 174, 203, 233, 262, 291, 320, 349, 378, 407, 436, 465, 494, 523.  For count 1 (infringement of RE44,222) only, Blue Spike additionally alleges that FCC had knowledge as a result of (4) "[b]log postings about Defendant being a serial infringer of patent rights." *Id.* ¶ 52.

But Blue Spike identifies no specific "analyses," "investigation", "news coverage," or "blog postings" that allegedly called the patents to FCC's attention.  Rather, Blue Spike's allegations amount—at best—to speculation that FCC *might* have been aware of the patents-in-suit as a result of these unspecified sources and activities.  This does not meet the pleading standard.  *Cf. Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully.").

Moreover, the mere fact that Blue Spike sued many other defendants and that such lawsuits may have been covered by the media is not sufficient to prove Frontier had knowledge of the patents and its alleged infringement, especially in light of Blue Spike's threadbare allegations and the sheer number of lawsuits filed against telecommunications providers.  *See, e.g.*, *SoftView LLC v. Apple Inc.*, 2012 WL 3061027, at *6 (D. Del. July 26, 2012) ("The mere fact that SoftView's lawsuit against Apple and AT&T was reported in certain media outlets does not, by itself, plausibly suggest that Kyocera would have been aware of those particular media reports, particularly given the sheer number and frequency of patent lawsuits asserted against smartphone manufacturers."); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) ("This court has not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent."); *cf. Stragent*, 2017 WL 2821697, at *8 (dismissing for failure to adequately plead pre-suit inducement, despite plaintiff's response that

defendant may have known of patents "in light of prior litigations filed by Plaintiff against [defendant's] apparent suppliers of [accused] AUTOSAR components").

In addition, other courts have rejected allegations that a defendant should have had knowledge of a patent through its own "due diligence." *See, e.g.*, *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, 2018 WL 1367324, at *6 (N.D. Cal. Mar. 16, 2018) (holding that plaintiff's "allegations regarding 'defendant's exercise of due diligence pertaining to intellectual property affecting its Devices'" were not "sufficient to establish knowledge"); *Pacing Techs., LLC v. Garmin Intern., Inc.*, 2013 WL 444642, at *2 (S.D. Cal. Feb. 5, 2013) (holding that competitor's allegations that defendant "holds hundreds of patents, regularly files patent applications, and performs due diligence including patent searches and prior art searches related to fitness products" are "too speculative" to plead pre-suit knowledge). Blue Spike's guess as to what "analyses" and "investigation" FCC may have performed do not state a plausible claim for pre-suit knowledge. Judgment on the pleadings should be granted against Blue Spike's pre-suit willfulness and pre-suit inducement claims.

Finally, Blue Spike has failed to state a claim that FCC had the specific intent, prior to the Complaint, to induce its customers to perform infringing acts. Blue Spike alleges FCC "provid[es] information on how to access the Internet via its router system," Compl. ¶ 43 (count 1), "provid[es] information on how to access infringing streaming content," *id.* ¶¶ 74, 105, 136, 165, 194, 224, 253, 282, 311, 340, 369, 398, 427, 456, 485, 514 (counts 2 through 17), "provides customers other incentives to use the infringing services, such as through discounted offers," *id.* ¶¶ 44, 75, 106, 137, 166, 195, 225, 254, 283, 312, 341, 370, 399, 428, 457, 486, 515, "adverti[ses] an infringing use" (without saying what that use is), *id.* ¶¶ 39, 70, 101, 132, 161, 190, 220, 249, 278, 307, 336, 365, 394, 423, 452, 481, 510, and provides "instructions accompanying the [Business Internet,

17

FiOS TV, or Spectrum Accused Products and Services, or accused device], its technical support, demonstrations and tutorials," *id.* ¶¶ 45, 76, 107, 138, 167, 196, 226, 255, 284, 313, 342, 371, 400, 429, 458, 487, 516.  Yet Blue Spike has not alleged that *every* use of the Accused Services infringes.  Thus the allegations that FCC has provided information on how to use the services as a whole, or has advertised or provided discounts for the Accused Services as a whole (as opposed to any allegedly infringing functionality of those services), does not show specific intent to infringe. As this Court has previously stated, "[g]eneric allegations that [defendants] provide instructional materials along with accused products, without more, are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim."  *Stragent*, 2017 WL 2821697, at *9 (citing *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307, D.I. 77, at 6–7 (E.D. Tex. Feb. 7, 2014) (allegations of "providing its customers and others with detailed explanations, instructions, and information as to arrangements, applications, and uses of the Infringing Systems that promote and demonstrate use of the Infringing Systems" were insufficient); *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015) ("generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient")).  Accordingly, judgment on the pleadings should also be granted against Blue Spike's pre-suit inducement allegations for this additional reason.

## VI.    CONCLUSION

For the reasons stated above, judgment on the pleadings should be granted in FCC's favor for every claim in Blue Spike's Complaint.

Dated: September 5, 2018

Respectfully submitted,

By: */s/ Jeanne M. Heffernan*

Jeanne M. Heffernan
jheffernan@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Clyde M. Siebman (State Bar No. 18341600)
clydesiebman@siebman.com
Stephanie R. Barnes (State Bar No. 24045696)
stephaniebarnes@siebman.com
**SIEBMAN, FORREST, BURG &
SMITH, LLP**
Federal Courthouse Square
300 North Travis Street
Sherman, TX 75090
Telephone: (903) 870-0070
Facsimile: (903) 870-0066

**Attorneys for Frontier Communications
Corp.**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 5th day of September, 2018, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Jeanne M. Heffernan

Jeanne M. Heffernan